<u>NOT FOR PUBLICATION</u>

**<u>UNITED STATES DISTRICT COURT</u>**
**<u>FOR THE DISTRICT OF NEW JERSEY</u>**

————————————————————— :
                           :
AMIN S. MOAWAD,                :
                           :
            Plaintiff,          :
                           :          Civil Action No. 05-00191 (JAG)
                  v.               :
                           :                 **OPINION**
COMMISSIONER OF SOCIAL SECURITY,  :
                           :
            Defendant.       :
————————————————————— :

**<u>GREENAWAY, JR., U.S.D.J.</u>**

**I.  <u>INTRODUCTION</u>**

Plaintiff Amin S. Moawad seeks review of the Commissioner of Social Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405 (g).[1]  Plaintiff argues that the Commissioner's decision is not supported by substantial evidence and should be reversed.  For the reasons set forth in this Opinion, this Court finds that the Commissioner's decision is supported by substantial evidence and should be affirmed.

_____

[1]  These sections of the Social Security Act ("Act") provide that any individual may obtain a review of any final decision of the Secretary of Health and Human Services ("Secretary") made subsequent to a hearing to which he or she was a party.  Under 42 U.S.C. § 405(g), the federal district court for the district in which the plaintiff resides is the appropriate place to bring such an action.

## II. **PROCEDURAL HISTORY**

On February 26, 2002, Plaintiff filed an application for DIB and all other insurance benefits, for which he claimed he was eligible, pursuant to Sections 216(I) and 223(a) of the Social Security Act ("Act"), codified as 42 U.S.C. §§ 416(I), and 423, respectively.  (Tr. 36.)[2] Plaintiff based his claim on pain caused by a herniated disc in his lower back.  (Pl.'s Mem. of L. at 4.)  The Social Security Administration ("SSA") denied Plaintiff's initial application on July 22, 2002, and then affirmed its decision following Plaintiff's request for reconsideration on October 29, 2002. (Tr. 28-9).  Plaintiff subsequently requested an administrative hearing.  (Tr. 33.)  On August 15, 2003, Plaintiff appeared before Administrative Law Judge Dennis O'Leary ("ALJ").  (Tr. 15.)  The ALJ held that Plaintiff was not entitled to DIB and ineligible for SSI benefits under Sections 216(I) and 223 of the Act.  (Id.)  The ALJ found:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's back problem is a severe impairment, based upon the requirements in the Regulations (20 C.F.R. §§ 404.1521 and 416.921).

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. I find the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

---

[2]  The Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record, including any evidence used to formulate her conclusion or decision.  42 U.S.C. § 405(g).  "Tr." refers to that transcript.

2

6.     I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment (20 C.F.R. §§ 404.1527 and 416.927).

7.     The claimant has had, at all material times, the residual functional capacity to perform sedentary work.

8.     The claimant's past relevant work as an accountant did not require the performance of work-related activities precluded by his residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

9.     The claimant's medically determinable back problem does not prevent the claimant from performing his past relevant work.

10.    The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(e) and 416.920(e)).

(Tr. 19.)  On November 8, 2004, Administrative Appeals Judge Adelaide Edelson denied Plaintiff's appeal of the ALJ's decision.  (Tr. 6.)  Plaintiff then filed the instant action, seeking reversal of the Commissioner's decision, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g).

## III.  STATEMENT OF THE FACTS

### A.     Background

Plaintiff was born on November 11, 1960, and has obtained a college degree.  (Tr. 22, 41, 207.)  Prior to 2000, Plaintiff worked as an accountant, and a sales manager.  (Tr. 51, 90, 208-9.)  In 2000, Plaintiff worked as a controller and accountant for Aramarine Brokerage, Inc.  (Tr. 47.)  Plaintiff stopped working on December 21, 2000, due to his allegedly progressively worsening neck and back problems, which resulted from a 1997 motor vehicle accident.  (Tr. 21, 50, 209.)

Plaintiff contends that he is unable to work on a sustained basis because sitting down for more than fifteen minutes aggravates his condition, causing shooting pain to run through his arms and legs.  (Tr. 34, 212.)

**B.**      <u>**Claimed Disabilities**</u>

As this Court has noted, Plaintiff stopped working in December 2000, allegedly because of his gradually worsening back injury resulting from a motor vehicle accident, which occurred in 1997.  (Tr. 209, 217.)  He testified that the pain in his lower back and neck is nearly constant, and causes shooting pain and numbness to radiate in his arms and legs.  (Tr. 207.)  Despite taking a number of prescription medications, including Percocet, Plaintiff alleges that his pain is so severe that he cannot stand or sit for a prolonged length of time without pain.  (Tr. 209-210, 216.)  Plaintiff testified that he experiences side effects from his prescription medications, which interfere with his daily activities.  These side effects include dizziness, fatigue, and stomach problems.  (Tr. 211, 213.)  The record also indicates that Plaintiff claims to suffer from sleep deprivation and chronic daytime fatigue, as a result of the severity of his pain.  (Tr. 141, 192.)

**C.**      <u>**Medical History**</u>

The record indicates that several physicians have evaluated and treated Plaintiff's injuries.

**1.**      **Dr. Wagih Tadros**

Beginning in 1998, Plaintiff's primary care physician, Dr. Wagih Tadros of East Brunswick Medical Associates, noted that Plaintiff was having lower back and neck problems.  (Tr. 93, 125, 128-9, 182.)   Plaintiff's treatment included prescriptions of Percocet, Skelaxin, Alprazolam, and Naproxen.  (Tr. 55.)

On May 3, 2001, Dr. Tadros completed a physician evaluation request form for Plaintiff's physical therapy treatment at the Main St. Medical facility.  In addition to prescribing Plaintiff's recommended treatment program, Dr. Tadros requested that a detailed diagnostic medical examination be performed on Plaintiff at the Main Street Medical facility.  (Tr. 97.)

4

Dr. Tadros conducted a physical examination of Plaintiff on May 7, 2001, noting that Plaintiff was an obese male suffering from lower back pain that radiated into both the right and left legs.  (Tr. 95-6.)  Dr. Tadros also indicated that there was some tenderness and rigidity along the sciatic nerve.  (Tr. 96.)  According to the record, patient purportedly rated his pain level as "10 out of 10," and reported that there was some stiffness in both legs.  (Tr. 94-5.)  Dr. Tadros made a primary diagnosis that Plaintiff was suffering from lumbar disc syndrome.  (Tr. 96).

### 2.    Dr. Howard Kessler

Dr. Tadros referred Plaintiff to Dr. Howard Kessler, a physician with Perth Amboy Diagnostic Imaging, who conducted two separate MRIs of Plaintiff's lumbosacral and cervical spines.  (Tr. 109-10.)  On July 8, 2000, Dr. Kessler reported that while there was normal alignment of the lumbar vertebrae, there was evidence of: (1) left foraminal disc herniation at L3-L4 without neural compression; (2) a disc bulge at L3-5 without neural compression; and (3) a posterocentral disc herniation at L5-S1, without neural compression. (Tr. 109.)  Also on July 8, 2000, Dr. Kessler reported normal alignment of the cervical vertebrae, with no disc herniation or foraminal encroachment.  (Tr. 110.)

On April 27, 2001, Dr. Kessler conducted a second MRI of Plaintiff's lumbosacral spine at Dr. Tadros' request.  (Tr. 101.)  Dr. Kessler reported a posterocentral disc herniation at L5-S1, contacting the ventral thecal sac.  (Id.)

### 3.    Main Street Medical

On May 3, 2001, Plaintiff began physical therapy and muscle relaxation treatments at Main Street Medical facility.  (Tr. 52.)  Treatment occurred three times a week for a total of four weeks, and included heat, traction, manual EMS, and massage therapies.  (Tr. 97.)  Plaintiff's

physical therapy concluded on June 1, 2001.  (Tr. 52.)

Also on May 3, 2001, a diagnostic exam of Plaintiff's condition was conducted at Main Street Medical at the request of Dr. Tadros.  (Tr. 97.)  The orthopedic neurological examination indicated that Plaintiff had normal ambulation and gait, but noted that Plaintiff had slightly below normal levels of (1) lumbar flexion, (2) lumbar extension, (3) lateral right flexion, (4) lateral left flexion (5) rotation right, and (6) rotation left capabilities.[3]  (Tr. 98.)

### 4.    Dr. Monir A. Dawoud

Beginning on June 1, 2001, and extending through August 13, 2003, Plaintiff saw Dr. Monir A. Dawoud, a trauma surgeon with the Summit Medical Center, to whom he had been referred by Dr. Tadros.  (Tr. 191, 194.)  Dr. Dawoud diagnosed Plaintiff with lumbosacral disc herniation at L5-S1 with radiculopathy and cervical disc herniation with radiculopathy.  (Id.)

On June 1, 2001, Dr. Dawoud performed a physical examination of Plaintiff and noted:

(1) tenderness of the C/S & paraspinal muscles, (2) decreased range of movement in the neck, to 20 degrees in flexion, 10 degrees bilaterally and in extension, (3) tenderness of the lumbo-sacral spine and paraspinal muscles bilaterally, (4) decreased range of movement of the L/S spine at  20 degrees in flexion, 10 degrees bilaterally and in extension, (5) hyperesthesia at the level of C3-C7 nerve roots distribution in both arms, (6) severe lumbo-sacral pain at 45 degree bilateral leg lift, (7) hyperesthesia and decreased motor power at the level of L4-S2 nerve roots distribution of both legs, and (8) abnormally low planter reflexes bilaterally in tendons.

(Tr. 172.)  Dr. Dawoud's initial impression was that Plaintiff suffered from an acute cervical sprain with severe bilateral radiculopathy, and a lumbosacral sprain with severe bilateral radiculopathy.  (Id.)  Dr. Dawoud prescribed Relafen and Ultram to treat the pain, and physical

---

[3]  The record fails to identify the physician who conducted the orthopedic neurological examination.

therapy three times a week.  (Id.)  Plaintiff was also given a Knight L-S brace to wear, "most of the time," for orthopedic support.  (Id.)

From June 1, 2001 through August 13, 2002, Dr. Dawoud performed weekly physical examinations and made similar notations regarding Plaintiff's condition, including tenderness of the cervical spine and paraspinal muscles, neck, and lower back pain shooting to the appendages, limited range of movement, and cervical and lumbosacral disc herniation with increasing bilateral radiculopathy.  (Tr. 172-84, 142-45.)  Dr. Dawoud's treatment notes indicate that he treated Plaintiff with physical therapy and para-vertebral nerve block injections to the sciatic nerve areas of both sides of the spine.  (Tr. 142-45, 167-68.)  Dr. Dawoud also prescribed five milligrams of Percocet and one milligram of Xanex, per day.  (Tr. 88.)  On multiple occasions, Dr. Dawoud noted improved neck pain and bilateral cervical radiculopathy.  (Tr. 142, 144, 167.)

In a letter to Guardian Life Insurance Company of America addressing Plaintiff's request for long-term disability income, dated August 13, 2002, Dr. Dawoud stated that Plaintiff was unable to stand or sit down for more than a period of fifteen to thirty minutes, after which he had to lay flat on his back for more than one hour on a firm orthopedic mattress.  (Tr. 141.)   Walking purportedly caused Plaintiff severe intolerable back pain that obliged him to stop in less than one block's distance.  (Id.)  Dr. Dawoud also indicated that Plaintiff had been urged to seek neuro-surgical intervention of his disc problems, but refused referral to neuro-surgery care because he feared possible complications arising from his morbid obesity.[4]  (Id.)  Dr. Dawoud determined that the surgical route seemed unsuitable in Plaintiff's present condition.  (Id.)

_____

[4]  According to Dr. Dawoud's case notes from August 13, 2002, Plaintiff was unable to lose weight and weighed 255 pounds.  (Tr. 145.)

5. **State Agency Physicians' Review of Plaintiff's Medical Records**

 a. **Dr. Ronald Bagner**

On July 9, 2002, Dr. Ronald Bagner, a state agency physician, reviewed Plaintiff's medical records and conducted a physical examination at the request of the Department of Labor, Division of Disability Determination Services. (Tr. 136.) Dr. Bagner determined that there was some pain on movement in the cervical region, both shoulders, and the lower back. (Tr. 136-37.) He also noted that Plaintiff had cervical and lumbar radiculopathy. (Id.) Plaintiff was able to move slowly and carefully, however, and Dr. Bagner stated that there was a normal range of movement in his shoulders, lower back, and knees. (Id.) He also noted that there was a limited range of motion in the lower back, but no motor or sensory abnormalities in either Plaintiff's arms or legs. (Tr. 137.) Dr. Bagner further noted that Plaintiff ambulated with a slow cautious gait, got on and off the examining table with moderate difficulty, dressed and undressed without assistance, did not use a cane or crutches, and did not appear uncomfortable while seated during the length of the interview. (Id.)

 b. **Dr. Robert Walsh**

On July 19, 2002, state agency medical consultant Dr. Robert Walsh completed a Physical Residual Functional Capacity Assessment. (Tr. 146-53.) Dr. Walsh concluded that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of at least four hours in an eight hour workday, sit (with normal breaks) for a total of about six hours in an eight hour workday, and push and/or pull an unlimited amount. (Tr. 147.) He noted that Plaintiff could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. (Tr. 148.) Dr. Walsh stated that Plaintiff could

occasionally balance, stoop, kneel, crouch, and crawl.  (Id.)  Dr. Walsh concluded that Plaintiff

could perform light work.[5]  (Tr. 151.)

### 6.     Dr. Scott Greenburg

Plaintiff's Disability Report and Development Summary also indicates that Plaintiff saw a

Dr. Scott Greenburg for his neck and back pain, but there is no other mention of Dr. Greenburg

in the record.

## IV.  DISCUSSION

### A.     Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §

405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial

evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services,

841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co.

v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of

evidence but may be less than a preponderance."  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.

1988) (citing Stunkard, 841 F.2d at 59).  The reviewing court must consider the totality of the

evidence and then determine whether there is substantial evidence to support the Commissioner's

---

[5]   Light work involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds.  A job in this category may require a good deal of walking or standing, or may involve sitting most of the time.  To be considered capable of performing a range of light work, you must have the ability to do substantially all of these activities.  20 C.F.R. § 404.1567(b).

decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).  Furthermore, the reviewing

court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-

finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom.

Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir.

1984)).

     In determining whether there is substantial evidence to support the Commissioner's

decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses

and expert opinions of treating and examining physicians on subsidiary questions of fact; (3)

subjective evidence of pain testified to by the claimant and corroborated by family and neighbors;

and (4) the claimant's educational background, work history and present age."  Blalock v.

Richardson, 483 F.2d 773, 776 (4th Cir. 1973); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J.

1981).  Where there is substantial evidence to support the Commissioner's decision, it is of no

consequence that the record contains evidence that may also support a different conclusion.

Blalock, 483 F.2d at 775.

**B.     Statutory Standards**

     The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. §

423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and

aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if

he is unable to "engage in substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is

predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); see also Nance v. Barnhart, 194 F. Supp. 2d 302, 316 (D. Del. 2002). Additionally, while subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). An impairment only qualifies as a disability if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

**C.      The Five-Step Evaluation Process and the Burden of Proof**

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520. At the first step of the review, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[6] 20 C.F.R. § 404.1520(b). If a claimant is found to be engaged in such activity, the claimant is not "disabled," and the disability claim will be denied. Id.; Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. §§ 404.1520(a)(ii), (c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered. Id. If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

---

[6] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. <u>See</u> 20 C.F.R. § 404.1594(f)(2). If the claimant's impairment(s) meets or equals one of the listed impairments, he will be found disabled under the Social Security Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

In <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit Court of Appeals found that to deny a claim at step three, the ALJ must specify which listings[7] apply and give reasons why those listings are not met or equaled. In <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 (3d Cir. 2004), however, the court noted that "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of <u>Burnett</u> is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." (<u>Id.</u>) An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing." <u>Scatorchia v. Comm'r of Soc. Sec.</u>, 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(e). If the claimant is able to perform his past relevant work, he will not be found disabled under the Act. In <u>Burnett</u>, the Third Circuit set forth the analysis at step four:

---

[7] Hereinafter "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at120.  If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. § 404.1560(c)(1).  If the ALJ finds a significant number of jobs that the claimant can perform, the claimant will not be found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet his burden of establishing the existence of jobs in the national economy.  These guidelines dictate a result of "disabled" or "not disabled" according to combinations of vocational factors, i.e., age, education level, work history, and residual functional capacity.  These guidelines reflect the administrative notice taken of the number of jobs in the national economy that exist for a given combination of vocational factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When the vocational factors coincide with all the criteria of a rule, the rule directs a conclusion as to whether an individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell,

461 U.S. 458 (1983).  The claimant, however, may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether he is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Moreover, "the combined impact of the impairments will be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523; Parker v. Barnhart, 244 F. Supp. 2d 360, 369 (D. Del. 2003).  The burden, however, remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him for benefits.  See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability); see also Marcus v. Barnhart, No. 02-3714, 2003 WL 22016801, at *2 (E.D. Pa. Jun.10, 2003) (stating that "the burden was on [Plaintiff] to show that the combined effect of her impairments limited one of the basic work abilities").

While Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit Court of Appeals applies its procedural requirements, as well as its interpretation of Jones, to every step of the decision.  See e.g., Rivera v. Comm'r, No. 05-1351, 2006 U.S. App. LEXIS 2372, at *3 (3d Cir. Jan. 31, 2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format."  Id.

**D.**     **ALJ Findings**

Here, the ALJ applied the five-step sequential evaluation and determined that Plaintiff was not disabled within the meaning of the Act.  (Tr. 15.)  He first found that Plaintiff satisfied step one of the evaluation process because he had not engaged in any gainful activity since December 21, 2000.  (Tr. 16.)

In determining step two of the evaluation, the ALJ found that evidence established that Plaintiff has a "severe" impairment "involving back pain."  (Id.)

In step three of the evaluation, the ALJ found that Plaintiff did not disclose "medical findings, which meet or equal in severity to the clinical criteria of any impairment listed in Appendix 1, Subpart P to Regulations No. 4."  (Id.)  The ALJ noted that Plaintiff's subjective complaints of pain and limitation precluding work activity were not credible or consistent with Social Security Ruling 96-7p and 20 C.F.R. § 404.1529.  The ALJ stated that when evaluating Plaintiff's subjective complaints, he gave careful consideration to:

> (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) type, dosage, effectiveness, and adverse side-effects of pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities and work record.

(Id.)

In sum, the ALJ found that Plaintiff's complaints of disabling symptoms could not be reasonably accepted because the record evidence as a whole did not support the extent of Plaintiff's subjective complaints.  (Id.)  Although Plaintiff suffers from a medically "severe" impairment, the ALJ concluded that Plaintiff had the capacity to function adequately to perform many basic activities associated with work.  (Tr. 17.)  He noted that Plaintiff's own description of

15

his daily activities was not limited to the extent one would expect, given that he complained of disabling limitations and symptoms.  (Tr. 16.)  Plaintiff was fully capable of interacting with his family, and he participated in many household chores and activities.  (Tr. 17.)  During an examination with a state agency physician, Plaintiff also exhibited a full range of motion, albeit at a slower pace.  (Id.)  Consequently, the ALJ concluded that Plaintiff had the residual functional capacity to perform work involving lifting and carrying objects weighing up to ten pounds, and standing, walking, and sitting up to six hours in an eight hour work day.  (Id.)  The ALJ also found that Plaintiff had sought only a limited range of treatment for his alleged impairments and had even refused his treating physician's referral for neuro-surgery care.  (Id.)  According to the ALJ, this evidence fails to support Plaintiff's assertions of disability.  (Id.)

The ALJ found that Dr. Dawoud's conclusions regarding Plaintiff's disability, such as his opinion that Plaintiff could not perform even sedentary work on a regular and continuing basis, were unsupported by his own objective findings or the record as a whole.  (Tr. 18.)  The ALJ emphasized that although Dr. Dawoud reported that due to a combination of fatigue and severe pain, Plaintiff had limited ability to maintain concentration for extended periods, or to perform at a consistent pace, Plaintiff, himself, failed to testify to such allegations.  (Id.)

When considering the residual functional capacity conclusion reached by Dr. Walsh, who declared that Plaintiff was able to perform light work, the ALJ recognized that this physician was non-examining, and thus, his opinion did not deserve as much weight as other examining or treating physicians.  (Tr. 17.)  The ALJ found, however, that the opinions of non-examining physicians, such as Dr. Walsh, do deserve some weight, particularly in a situation where there exist a number of other reasons to reach similar conclusions.  (Id.)  Although he agreed with Dr.

Walsh's finding of "not disabled," the ALJ found Dr. Walsh's assessment of Plaintiff's ability to perform all the lifting and carrying requirements of light work on a consistent basis to be overly optimistic, and did not adopt his determination in its entirety.  (Id.)  Instead, the ALJ concluded that Plaintiff had the residual functional capacity to perform only sedentary work.  (Id.)

In considering step four, the final step in the evaluation, the ALJ indicated that Plaintiff had past relevant work as an accountant.  (Tr. 18.)  The ALJ noted that Petitioner's past relevant work as an accountant is generally performed at the sedentary exertional level, which requires no bending or stooping.  (Id.)  Despite Plaintiff's complaints of pain in his neck, arms, and legs, the ALJ found that Plaintiff's pain did not stop him from maintaining a good work record in the past. (Id.)  The ALJ concluded that Plaintiff had been capable, at all material times, of performing his past relevant work as an accountant, as the job is generally performed in the national economy, and that he was not disabled within the meaning of the Act.  (Id.)

## E.   Analysis

Plaintiff argues that the ALJ's decision should be reversed because it is contrary to regulations and is not supported by substantial evidence.  (Pl.'s Br. at 24.)  He contends that (1) the ALJ erred in not according controlling weight to the testimony of his treating physician, Dr. Dawoud; and (2) the ALJ lacked the requisite substantial evidence to support his finding that Plaintiff had the residual functional capacity to perform sedentary work.[8]   (Id. at 1; 14; 8-13.)

---

[8]  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

17

**1.     The ALJ Gave Proper Weight to the Opinion of Plaintiff's Treating Physician**

Plaintiff claims that the ALJ improperly ignored the opinions of his treating physician, Dr. Dawoud, regarding Plaintiff's physical and non-exertional limitations.  Plaintiff specifically points to Dr. Dawoud's opinion that due to the pain in Plaintiff's lower back and neck, and the numbness in his arms and legs, Plaintiff could not perform even sedentary work on a regular and continuing basis.  (Tr. 192.)  Dr. Dawoud further stated that Plaintiff should avoid any activities requiring frequent or repetitive use of his arms, and was unable to sit or stand for more than approximately fifteen to thirty minutes at a time.  (Id.)  Dr. Dawoud asserted that Plaintiff suffered from sleep deprivation due to his pain, with resultant chronic daytime fatigue.  (Id.)  Plaintiff's sleep deprivation allegedly limited his ability to maintain concentration for extended periods of time, or to perform at a consistent pace.  (Id.)  Dr. Dawoud also concluded that due to Plaintiff's morbid obesity, he was not a candidate for corrective surgery.[9]  (Tr. 141.)  Plaintiff claims that the ALJ's failure to afford controlling weight to Dr. Dawoud's opinions is contrary to 20 C.F.R. § 404.1527(d)(1) & (2) and SSR Ruling 96-5p.[10]  (Pl.'s Br. at 1, 9-12.)

Under 20 C.F.R. § 404.1527(d)(2), "a treating physician's opinion is entitled to

_____

[9]   In his treatment notes, Dr. Dawoud reported that Plaintiff refused referral to neuro-surgery care because he was afraid and was unable to lose weight.  (Tr. 145.)  Dr. Dawoud observed that Plaintiff's obesity makes him unsuitable for surgical intervention, and all trials to restrict his food intake failed.  (Tr. 141.)  Plaintiff contends that the ALJ erred in failing to consider Plaintiff's obesity  in the evaluation of his disability.  (Pl.'s Br. at 14.)  Contrary to this argument, however, the ALJ did consider Plaintiff's obesity, and Dr. Dawoud's observations regarding Plaintiff's unsuitability for surgery, in rendering the disability determination.  (Tr. 16.)

[10]   20 C.F.R. § 404.1527(d)(1) & (2) and SSR Ruling 96-5p establish the factors that the ALJ should consider in deciding the weight to give any medical opinion.

controlling weight [*only*] if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Wimberly v. Barnhart, 128 Fed. Appx. 861, 862 (3d Cir. April 18, 2005); Plummer, 186 F.3d at 429.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight is given to that opinion.  20 C.F.R. § 404. 1527(d)(3).

In the instant case, Dr. Dawoud's opinion that Plaintiff is unable to perform sedentary work is inconsistent with substantial medical evidence in both his own records and the case record generally.

Dr. Dawoud's treatment notes contradict the conclusion that Plaintiff's condition had deteriorated to the point where he was incapable of performing sedentary work.  In fact, several of Dr. Dawoud's entries indicate that Plaintiff exhibited a favorable response to the prescribed treatment of nerve block injections and physical therapy.  (Tr. 142-45.)  Moreover, Dr. Dawoud's treatment notes establish that over the course of time, Plaintiff's range of movement was improving.  For example, the progress note dated August 8, 2001, indicates that Plaintiff's lumbosacral spine displayed a range of movement of 35 degrees in flexion, 20 degrees on extension, and 15 degrees bilaterally, and straight leg lifting elicited pain at 45 degrees bilaterally.  (Tr. 175.)  The note dated February 8, 2002, shows that Plaintiff's condition improved to the point where his lumbosacral spine was at 50 degrees on flexion, 35 degrees on extension, and 30 degrees bilaterally, and straight leg lifting elicited pain at 60 degrees bilaterally.  (Tr. 182.)  On multiple occasions, Dr. Dawoud noted improved neck pain and bilateral cervical radiculopathy.  (Tr. 142, 144, 167.)

19

In addition, laboratory diagnostic studies of Plaintiff's back taken on July 8, 2000, contradict Dr. Dawoud's diagnosis.  The laboratory diagnostic studies indicate that while Plaintiff suffers from disc herniation, he does not have neural compression.[11]  (Tr. 109-10.)  The lack of neural compression is particularly important because, if the herniated material does not press on soft tissues or nerves, it may not result in as severe symptoms as those associated with herniated discs compounded by neural infringement.  As a general matter, there should be less pain and less likelihood of motor impairment for sufferers of disc herniation *without* neural compression, such as Plaintiff, as compared to those individuals suffering from disc herniation *with* neural compression.[12]

Dr. Dawoud's opinion is also partly contradicted by the opinions of two other state agency physicians – Dr. Bagner and Dr. Walsh.  Dr. Bagner concluded that Plaintiff suffered from a posterocentral disc herniation at L5-S1 contacting the ventral thecal sac.  (Tr. 136.)  Although he noted some pain on movement in the cervical region, shoulders, and lower back, according to Dr. Bagner, Plaintiff was able to maintain a range of movement, albeit carefully and slowly.  (Tr. 137.)  Dr. Bagner further noted a normal range of movement in both Plaintiff's

---

[11]  A herniated disc results when the soft, gelatinous central portion of an intervertebral disc is forced through a weakened part of a disc.  AllRefer Health.com, Herniated Nucleus Pulposus, http://health.allrefer.com/health/herniated-nucleus-pulposus-slipped-disk-info.html (last visited January 22, 2007).

[12]  Neural compression occurs when the herniated disc impinges on spinal nerve roots, inducing considerable pain, damaging the nerves, and interfering with motor functions. MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY, 808 (6th ed. 2002).  See also AllRefer Health.com, Herniated Nucleus Pulposus, http://health.allrefer.com/health/herniated-nucleus-pulposus-slipped-disk-info.html (last visited January 22, 2007).

upper and lower extremities, with no motor or sensory abnormalities.[13]  (Id.)  During the

examination, Dr. Bagner reported that Plaintiff was able to move around slowly without

assistance, and did not display any discomfort in the seated position during the course of the

interview.  (Id.)

State agency medical consultant, Dr. Walsh also determined that the severity and duration

of Plaintiff's alleged symptoms of pain were inconsistent with Dr. Bagner's physical

examination.  (Tr. 151.)  After reviewing the totality of available evidence, Dr. Walsh concluded

that Plaintiff was capable of performing light work.  (Tr. 147.)   The ALJ found Dr. Walsh's

opinion to be overly optimistic, however, and gave Plaintiff the benefit of the doubt that he

would be unable to perform all the lifting and carrying requirements of light work on a consistent

basis.  (Tr. 17.)  Although Dr. Walsh was a non-examining state agency medical physician, the

ALJ appropriately considered his opinion to the extent permissible under SSR 96-6p and 20

C.F.R. § 404.1527(f), in conjunction with other supporting evidence in the case record.[14]  (Id.)

An ALJ need not defer to a treating physician's opinion about the ultimate issue of

disability because that determination is an administrative finding reserved to the Commissioner.

20 C.F.R. § 404.1527(e); Knepp v. Arfel, 204 F.3d 78, 85 (3d Cir. 2000); Alexander v. Shalala,

---

[13]  Dr. Bagner's evaluation of Plaintiff's upper extremities included the elbows, forearms, wrists, and fingers.  Plaintiff was able to make a fist and oppose the thumbs bilaterally.

[14]  20 C.F.R. § 404.1527(f) and SSR 96-6p state that all evidence from non-examining sources are considered as opinion evidence.  A state agency medical consultant is permitted to consider evidence in plaintiff's case record and make findings of fact about the medical issues, including but not limited to, the existence and severity of plaintiff's impairment and symptoms, as well as plaintiff's residual functional capacity.  When evaluating the findings of a state agency medical consultant, an ALJ should use the relevant factors listed in 20 C.F.R. § 404.1527(a) – (e), which include any supporting evidence in the case record.

927 F. Supp. 785, 792 (D.N.J. 1995), aff'd 85 F.3d 611 (3d Cir. 1996).  SSR 96-5p provides that

if the case record contains an opinion from a medical source on an issue reserved to the

Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the

extent to which the opinion is supported by the record.  "The ALJ must consider all medical

evidence in the record and provide adequate explanations for disregarding or rejecting evidence,

especially when testimony of the claimant's treating physician is rejected."  Boyce v. Barnhart, 66

Fed. Appx. 297, 299 (3d Cir. March 28, 2003). See also Claussen v. Chater, 950 F. Supp. 1287,

1292 (D.N.J. 1996);  Wier on Behalf of Wier v. Heckler, 734 F.2d 955, 961 (3d Cir. 1984);

Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  Thus, so long as the ALJ articulated his

rationale for disregarding certain medical testimony, his decision must be upheld.

  In this instance, the ALJ evaluated the totality of the evidence and determined that Dr.

Dawoud's opinion was not supported by his own objective findings or the record as a whole.

(Tr. 18.)  The ALJ found that the findings of the two state agency physicians, combined with Dr.

Dawoud's personal observations, diagnosis, and treatment notes of Plaintiff's condition, clearly

establish that Dr. Dawoud's conclusions are inconsistent with substantial evidence in the case

record.  In light of the volume of evidence contradicting Dr. Dawoud's opinions, this Court

concludes that the ALJ appropriately did not afford controlling weight to Dr. Dawoud's opinions

regarding Plaintiff's physical and non-exertional limitations.

  **2. Substantial Evidence Supports the ALJ's Finding that Plaintiff has the Residual Functional Capacity to Perform his Past Relevant Work.**

  Plaintiff also contends that the ALJ did not base his finding that Plaintiff had the residual

functional capacity to perform his past relevant work as an accountant on substantial evidence.

Plaintiff specifically asserts that the ALJ (1) failed to evaluate his subjective complaints of pain properly; and (2) failed to support his residual functional capacity finding with the medical opinion of a physician.  (Id at 1.)

Relying on Plaintiff's testimony regarding his daily activities, Dr. Dawoud's treatment notes, the opinions of both state agency doctors, and Plaintiff's past work record, the ALJ concluded that while Plaintiff suffered from a medically determinable severe impairment, Plaintiff had the residual capacity to function adequately to perform many basic activities associated with work.  (Tr. 17.)  He found that Plaintiff has had, at all material times, the residual functional capacity to perform sedentary work involving lifting and carrying objects up to 10 pounds, standing, walking, and sitting up to 6 hours in an 8 hour day.  (Id.)  The ALJ also found that Petitioner's subjective complaints of disabling pain, and other symptoms and limitations precluding all significant work activity, were not fully credible or consistent with 20 C.F.R. § 404.1529[15] and SSR 96-7.[16]  (Tr. 16.)

_____

[15]  20 C.F.R. § 404.1529 states that:
> When evaluating a claimant's disability, the ALJ considers all symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  Other evidence includes statements or reports from the claimant, the treating or non-treating source, and others about a claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how the impairment(s) and any related symptoms affect a claimant's ability to work.

[16]  SSR 96-7 provides, in pertinent part:
> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an

### a.      Plaintiff's Subjective Complaints of Pain

Plaintiff first argues that the ALJ failed to evaluate his subjective complaints of pain and discomfort properly.  (Tr. 1, 15.)  Plaintiff complained of increasingly constant pain in the cervical and lower back regions, with shooting pains down both arms and legs, and tingling and numbness in his arms and legs.  (Tr. 212.)  He also testified that he could not maintain the same position for more than 15-20 minutes, suffered from fatigue, dizziness and drowsiness from the pain medication, and had trouble concentrating and using his hands.  (Tr. 212-15.)

"An ALJ must consider a claimant's subjective symptoms, including pain, and may not discount those symptoms if they are reasonably consistent with the objective medical evidence and other evidence in the record."  Robleto v. Barnhart, No. 05-4843, 2006 WL 2818431, at *10 (E.D. Pa. 2006) (citing Chrupcala v. Heckler, 829 F.2d 1269, 1275-76 (3d Cir. 1987); 20 C.F.R. § 404.1529).  While an ALJ must consider a claimant's subjective complaints, an ALJ has discretion to evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant.  Gantt v. Commissioner Social Security, 2006 U.S. App. LEXIS 227117, *3 (3d Cir. 2006).  Accordingly, an ALJ's "credibility determinations are entitled to great deference and should not be discarded lightly."  Id.  (citing Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003)).

A Plaintiff "'bears the burden of demonstrating that [his] subjective complaints were substantiated by medical evidence.'"  Person v. Barnhart, 380 F. Supp. 2d 496, 508 (D.N.J. 2005)

---

individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

(citing <u>Alexander v. Shalala</u>, 927 F. Supp. 785, 795 (D.N.J. 1995), <u>aff'd</u> per curiam 85 F.3d 611 (3d Cir. 1996)).  However, a Plaintiff's "subjective complaints of pain will not be conclusive evidence of disability absent objective medical evidence that demonstrates the existence of [the] medical impairment."  <u>Robleto</u>, 2006 WL 2818431, at *10 (citing 20 C.F.R. § 416.929(a); <u>Hartranft v. Apfel</u>, 181 F.3d 358, 362 (3d Cir. 1999)).

In addition to the observations of the state agency physicians, Dr. Bagner and Dr. Walsh, which indicate that Plaintiff displayed a range of movement that was not as limited as he claimed, other evidence in the case record suggests that while Plaintiff admittedly suffers from a severe medical impairment, some of his symptoms, such as his purportedly disabling levels of pain, are not reasonably attributed to his injuries.

The diagnostic study conducted on July 8, 2000, indicated that Plaintiff's disc herniation and radiculopathy did not compress surrounding nerves, which signifies that, as a general matter, Plaintiff should experience less pain and have less restricted motor functions than an individual suffering from disc herniation with neural compression.  (Tr. 109.)  Also, on multiple occasions, Dr. Dawoud noted favorable responses to the prescribed treatment of nerve block injections and physical therapy, including improved neck pain and bilateral cervical radiculopathy.  (Tr. 142-45, 167.)

Plaintiff's own testimony regarding his daily activities further casts doubt on the credibility of his complaints.  For example, Plaintiff indicated that Dr. Dawoud had placed certain restrictions on his activities, including refraining from sitting for longer than 15 minutes and not lifting anything more than 10 pounds.  (Tr. 210.)  Nevertheless, Plaintiff reported that he was able to do a number of tasks, including making his own meals, housework, taking his

children to school, and occasionally venturing outside for recreational purposes, such as shopping and visiting with friends or relatives.  (Tr. 213-14.)  This Court concludes, based on this evidence, that the ALJ's finding that Plaintiff's subjective complaints are not fully credible is supported by ample evidence in the record.

### b.    Supporting Physicians' Opinions

Plaintiff next argues that the ALJ failed to support his residual functional capacity finding with the medical opinion of a physician.  Contrary to Plaintiff's assertion, however, the ALJ based his determination on the assessments of two state agency physicians, as well as Dr. Dawoud's treatment notes.

The opinions of state agency physicians may constitute substantial evidence if supported by other evidence in the record.  20 C.F.R. §§ 404.1527(f) and 416.92(f).  In the instant case, the ALJ relied on the observations and opinions of both state agency physicians, Dr. Bagner and Dr. Walsh, which are amply supported by other evidence in the record.  Dr. Bagner performed a physical examination of Plaintiff and concluded that there was (1) normal range of movement with some pain in the cervical spine, but no motor or sensory abnormality in the upper extremities, and (2) limitations of motion in his lumbosacral spine, but no motor or sensory abnormality in the lower extremities.  (Tr. 137.)  Dr. Bagner also noted that Plaintiff was fully capable of ambulating at a slow pace, was able to remain seated for the duration of the interview, and functioned without the aid of an assistive device.  (Id.)

In his physical residual functional capacity assessment, Dr. Walsh presented a far more positive view of Plaintiff's abilities and offered the opinion that Plaintiff could perform light work. (Tr. 147.)  According to Dr. Walsh, Plaintiff could lift and/or carry 20 pounds, frequently

lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of at least 6 hours in an 8 hour workday, sit (with normal breaks) for a total of about 6 hours in an 8 hour workday, and push and/or pull an unlimited amount.  (Id.)  Although the ALJ agreed with Dr. Walsh's assessment that Plaintiff was not disabled within the meaning of the Act, the ALJ concluded that Dr. Walsh's assessment that Plaintiff had the capacity to perform the exertional demands of light work to be overly optimistic.  (Tr. 17.)  Instead, the ALJ found that Plaintiff was capable of performing sedentary work, as defined by 20 C.F.R. § 404.1567(a).[17]  (Id.)

　　　As this Court has previously explained, the ALJ's residual functional capacity finding is also substantiated by ample evidence contradicting Plaintiff's subjective complaints of pain and restricted movement.  Such evidence includes Plaintiff's account of his daily activities, the fact that Plaintiff's herniated disc was not compounded by neural compression, and Dr. Dawoud's treatment notes, which indicate that Plaintiff exhibited a favorable response to the prescribed course of treatment.  This substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints are not attributable to his physical injuries, and that his range of movement was not so limited as to preclude Plaintiff's performance of his past relevant work.

　　　The ALJ's finding is also supported by Plaintiff's Work History Report and work record. The Department of Labor's Dictionary of Occupational Titles ("DOT") states that Plaintiff's past position as an accountant is generally performed at the sedentary exertional level, which involves sitting, lifting no more than 10 pounds at a time, and carrying articles like docket files and

---

[17]  This finding is in accordance with 20 C.F.R. § 404.1567(c), which provides that the ALJ retains final responsibility for determining Plaintiff's residual functional capacity.

ledgers.  20 C.F.R. § 404.1567(a).  Plaintiff's Work History Report, dated March 7, 2002,

reflects that Plaintiff's past position as an accountant involved similar requirements, such as

sitting for approximately 8 hours a day, lifting and carrying large numbers of files, and frequently

lifting less than 10 pounds.  (Tr. 73.)   Plaintiff contends that his medical problems originated

from a motor vehicle accident in 1997, and worsened until he had to stop working.[18]  Despite his

complaints of allegedly worsening pain, however, Plaintiff was able to perform his duties as an

accountant on a regular and continuous basis for three years, until December 21, 2000.[19] (Tr.

209.)  Plaintiff's work record provides additional evidence substantiating the ALJ's finding that

Plaintiff, even with his injuries, is capable of performing the basic activities associated with his

previous work as an accountant.  See Landeta v. Comm'r of Soc. Sec., 191 Fed, Appx. 105, 111

(3d Cir. August 14, 2006) (noting that ALJ's assessment of plaintiff's residual functional

capacity reasonably incorporated evidence from work history report completed by plaintiff);

Riggsbee v. Shalala, 1995 U.S. Dist. LEXIS 2283, *11 (D.N.J. 1995); Sassone v. Comm'r of

Soc. Sec., 165 Fed. Appx. 954, 955 (3d Cir. January 20, 2006) (requiring that the reviewing court

consider a number of different factors, including a plaintiff's work history, in assessing the extent

to which the record supports the [ALJ's] decision).

     The ALJ appropriately relied on the aforementioned substantial evidence to conclude that

---

[18]  According to Plaintiff's disability report, Plaintiff's condition first bothered him on
December 21, 2000, yet the record establishes that Plaintiff did not seek medical treatment until
February 18, 1998.  (Tr. 50, 129.)

[19]  Although Plaintiff indicated on his disability report that symptoms from his back injury
first began bothering him on the same day that he stopped working, this Court assumes that this
is a clerical error on Plaintiff's part.

Plaintiff was capable of performing his past relevant work.  (Tr. 18-19, 73.)  The ALJ's

conclusion that Plaintiff was not disabled, as defined by the Social Security Act, because Plaintiff

retained the residual functional capacity to perform his past relevant work is therefore affirmed.[20]

## V.  CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is

supported by substantial evidence and is affirmed.


Dated: February 23, 2007

 S/Joseph A. Greenaway, Jr.
                    JOSEPH A. GREENAWAY, JR., U.S.D.J.

---

[20]  It was not necessary for the ALJ to proceed to step five of the sequential analysis to determine whether there are other jobs existing in the national economy that would be suitable for a person in Plaintiff's condition.  20 C.F.R. § 404.1560(c)(1).